IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| THOMAS LYNN HAMILTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:18CV7 |
| ) | |
| NANCY A. BERRYHILL, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Thomas Lynn Hamilton ("Plaintiff") brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claims for Disability Insurance Benefits and Supplemental Security Income under, respectively, Titles II and XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.  PROCEDURAL HISTORY

Plaintiff protectively filed applications for Disability Insurance Benefits and Supplemental Security Income Benefits on December 27, 2013 and March 9, 2015, respectively, alleging a disability onset date of August 1, 2013 in both applications. (Tr. at 11, 164-71.)[1] Plaintiff's applications were denied initially (Tr. at 76-85, 104-07) and upon

---

[1] Transcript citations refer to the Sealed Administrative Record [Doc. #8].

reconsideration (Tr. at 86-103, 111-20). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 122-23.) Plaintiff, along with his attorney and an impartial vocational expert, attended the subsequent hearing on November 2, 2016. (Tr. at 11.) The ALJ ultimately concluded that Plaintiff was not disabled within the meaning of the Act from his alleged onset date through February 27, 2017, the date of the administrative decision. (Tr. at 28.) On November 8, 2017, the Appeals Council denied Plaintiff's request for review of this decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review. (Tr. at 1-5.)

II.  LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is

2

evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2]

---

[2] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

4

that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite the claimant's impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since August 1, 2013, his alleged onset date. Plaintiff therefore met his burden at step one of the sequential evaluation process. (Tr. at 14.) At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> peripheral vascular disease, gastritis, gastrointestinal hemorrhage, bipolar disorder, personality disorder, and drug and alcohol abuse.

(Id.) The ALJ found at step three that none of these impairments, individually or in combination, met or equaled a disability listing. (Tr. at 15-17.) The ALJ therefore assessed Plaintiff's RFC and determined that he could perform sedentary work with the following additional limitations:

> [Plaintiff] has the residual functional capacity to lift and/or carry ten pounds occasionally and less than ten pounds frequently. He can occasionally push and/or pull with the bilateral leg[s]. He can stand and/or walk for up to a total

of two hours in an eight-hour workday, and can sit for up to a total of six hours in an eight-hour workday. He can occasionally climb ramps [and] stairs, can never climb ladders, ropes, [or] scaffolds[,] and can occasionally kneel, crouch, and crawl. He can perform goal-oriented rather than production-oriented work (i.e., the performance of work tasks in allotted time is more important than the pace at which the work tasks are performed). He can perform simple, routine, repetitive work (i.e., requires little or no judgment; requires little specific vocational preparation and can be learned on the jobs within thirty days; does not provide work skills; and has no more than frequent changes in core work duties).

(Tr. at 17.) Based on the RFC determination, the ALJ found at step four of the analysis that Plaintiff was unable to perform any of his past relevant work. (Tr. at 25.) However, the ALJ found at step five that, given Plaintiff's age, education, work experience, RFC, and the testimony of the vocational expert as to these factors, he could perform other jobs available in the national economy. (Tr. at 25-27.) Accordingly, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. at 27-28.)

Plaintiff, citing Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015), now raises two challenges to the ALJ's RFC assessment. First, he contends that the ALJ improperly discounted Plaintiff's testimony regarding his physical limitations. Second, he argues that the ALJ failed to properly account for Plaintiff's moderate limitations in concentration, persistence, and pace. After a thorough review of the record, the Court finds that neither of these contentions merits remand.

A. Symptom Evaluation

Plaintiff first contends that substantial evidence fails to support the ALJ's evaluation regarding the limiting effects of Plaintiff's physical symptoms. Under the applicable regulations, the ALJ's decision must "contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly

6

articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." Social Security Ruling 16–3p, Titles II and XVI: Evaluation of Symptoms in Disability Claims, SSR 16–3p, 2017 WL 5180304 (Oct. 25, 2017) ("SSR 16–3p"); see also 20 C.F.R. § 404.1529.[4] In Craig v. Chater, the Fourth Circuit addressed the two-part test for evaluating a claimant's statements about symptoms. Craig, 76 F.3d at 594–95. "First, there must be objective medical evidence showing 'the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. at 594 (citing 20 C.F.R. § 404.1529(b)). If the ALJ determines that such an impairment exists, the second part of the test then requires him to consider all available evidence, including Plaintiff's statements about his pain, in order to evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects [his] ability to work." Craig, 76 F.3d at 595.

This approach facilitates the ALJ's ultimate goal, which is to accurately determine the extent to which Plaintiff's pain or other symptoms limit his ability to perform basic work activities. Relevant evidence for this inquiry includes Plaintiff's "medical history, medical signs, and laboratory findings" Craig, 76 F.3d at 595, as well as the following factors set out in 20 C.F.R. §§ 404.1529(c)(3):

---

[4] Social Security Ruling 16-3p eliminated use of the term "credibility" in reference to symptom evaluation, effective March 28, 2016. The Social Security Administration has clarified that Social Security Administration adjudicators "will apply this ruling when we make determinations and decisions on or after March 28, 2016" and that "[w]hen a Federal court reviews our final decision in a claim, we expect the court will review the final decision using the rules that were in effect at the time we issued the decision under review." Soc. Sec. Ruling 16-3p, 2017 WL 510304, at *1, 13 n.27 (Oct. 25, 2017). Because the ALJ's decision in this case was issued on February 27, 2017, after March 28, 2016, Social Security Ruling 16-3p applies to it.

7

(i) [Plaintiff's] daily activities;

(ii) The location, duration, frequency, and intensity of [Plaintiff's] pain or other symptoms;

(iii) Precipitating and aggravating factors;

(iv) The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or [has] taken to alleviate [his] pain or other symptoms;

(v) Treatment, other than medication, [Plaintiff] receive[s] or [has] received for relief of [his] pain or other symptoms;

(vi) Any measures [Plaintiff] use[s] or [has] used to relieve [her] pain or other symptoms (e.g., lying flat on [his] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

(vii) Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

Where the ALJ has considered these factors and has heard Plaintiff's testimony and observed his demeanor, the ALJ's determination is entitled to deference. See Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984).

Here, the ALJ determined that Plaintiff's "medically determinable impairments," including peripheral vascular disease, gastritis, and gastrointestinal hemorrhage, "could reasonably be expected to cause in general the alleged symptoms and limitations," but that "the extent of those symptoms and limitations [is] not supported by medically acceptable clinical and diagnostic techniques" or "by the records of the treating and examining healthcare professionals." (Tr. at 19.) Therefore, Plaintiff's challenge hinges on step two of the Craig analysis. It is undisputed that at step two, the ALJ should not reject a claimant's statements "about the intensity and persistence of [his] pain or other symptoms or about the effect [his] symptoms have on [his] ability to work solely because the available objective medical evidence

8

does not substantiate [his] statements." 20 C.F.R. § 404.1529(c)(2). Thus, "subjective evidence of pain intensity cannot be discounted solely based on objective medical findings." Lewis v. Berryhill, 858 F.3d 858, 866 (4th Cir. 2017). However, it is also undisputed that a plaintiff's "symptoms, including pain, will be determined to diminish [his] capacity for basic work activities [only] to the extent that [his] alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(c)(4). Thus, objective medical evidence and other evidence in the record are "crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs [his] ability to work." Hines, 453 F.3d at 565 n.3 (quoting Craig, 76 F.3d at 595). "Although a claimant's allegations about [his] pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges [he] suffers." Id.; see also SSR 16–3p ("[O]bjective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms, including the effects those symptoms may have on the ability to perform work-related activities.").

According to the regulatory guidance:

If an individual's statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and the other evidence of record, we will determine that the individual's symptoms are more likely to reduce his or her capacities to perform work-related activities. . . . In contrast, if an individual's statements about the intensity, persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence and the other evidence, we will determine that the individual's

9

symptoms are less likely to reduce his or her capacities to perform work-related activities.

SSR 16–3p.

Here, Plaintiff challenges the ALJ's evaluation of his subjective complaints based on a single statement in the administrative decision. At step five of the process, the ALJ observed that, "because it would be speculative, the undersigned declines to find with specificity the extent to which [Plaintiff's] productivity is reduced by his physical impairments and pain." (Tr. at 27.) Plaintiff notes that an identical statement was identified as erroneous in Mullen v. Berryhill, No. 4:16-CV-27-BO, 2017 WL 3412142, at *5 (E.D.N.C. Aug. 8, 2017). In that case, the court found that "this statement is contrary to the ALJ's obligations because, as the Fourth Circuit noted in Mascio, "a claimant's pain and residual functional capacity are not separate assessments to be compared with each other. Rather, an ALJ is required to consider a claimant's pain as part of his analysis of residual functional capacity." Id. (citing Mascio, 780 F.3d at 639). In Mullin, the court noted that the "speculative" statement, coupled with a lack of further explanation in the record, created a level of ambiguity that "would normally warrant remand," although the remand in that case was ultimately based on other errors regarding the claimant's mental limitations. 2017 WL 3412142, at *5. In the present case, however, the statement in question did not pertain to the ALJ's RFC analysis. Instead, at step five of the sequential analysis, the ALJ declined to speculate as to the exact productivity percentage Plaintiff could maintain in an 8-hour workday, but found more generally that the record supported the conclusion that Plaintiff's symptoms were not so extreme as to cause him to fall below the average, minimum productivity ranges for competitive employment, as opined by vocational experts. (Tr. at 27.) Specifically, the ALJ noted at step five that:

> The vocational expert opined that a minimum of 85% productivity in an 8-hour workday, not including the typical morning, lunch, and afternoon breaks is required to sustain unskilled competitive employment. The vocational expert also opined that a person could miss up to 1 workday a month and still maintain competitive employment.
>
> .... The majority of the vocational experts have opined that 90 to 95% is the minimum. Vocational expert testimony on toleration of missed workdays varies widely, but averages 1 to 1.5 workdays a month. ...
>
> Because it would be speculative, the undersigned declines to find with specificity the extent to which [Plaintiff's] productivity capacity is reduced by his physical and mental impairments and pain, or how many workdays a month [Plaintiff] would miss. The undersigned does not find that the record supports the conclusion that the impairments' symptoms are so extreme as to cause [Plaintiff] to fall below the average ranges discussed above.

(Tr. at 26-27.) In making these observations, the ALJ did not fail to consider Plaintiff's pain in setting the RFC, as Plaintiff alleges. Instead, at step five, the ALJ simply observed the range of vocational expert testimony on productivity capacity as a percent of the workday, and concluded that the record did not support the conclusion that Plaintiff's productivity would fall below the 90 to 95% average range, and thus there was no need to speculate as to an exact productivity percentage between 90% and 100%.

Moreover, unlike the decision in Mullin, the ALJ included substantial explanation regarding the assessment of Plaintiff's symptoms and the impact of those symptoms on his ability to work, as part of setting the RFC at step four. (Tr. at 18-24.) The ALJ noted that Plaintiff had various surgeries from 2010 to 2013, but his records reflected generally good recovery, and 2015 imaging showed no significant interval change and his doctor felt Plaintiff

11

was "doing well overall." (Tr. at 19-20.)[5] The ALJ then made the following conclusions based on the overall evidence of record:

> The severity of [Plaintiff's] allegations regarding his exertional abilities are inconsistent with the record. [Plaintiff] walks without assistance. Outside of August 2013, decreased balance is only in the treatment records as [Plaintiff's] subjective statements regarding his symptoms. While there is evidence [Plaintiff] does elevate his legs, the undersigned found no suggestion that this was at the recommendation of a medical professional. At an appointment in October 2016, Eric Gon-Chee Poon, M.D., wrote that [Plaintiff] claimed he was previously told [] that his leg pain would be relieved by putting up his legs. [Plaintiff] asked Dr. Poon to document this in the treatment records. While Dr. Poon did as [Plaintiff] requested, and noted [Plaintiff's] statement that he finds elevating his legs helpful, the doctor did not suggest this was medically necessary or recommended.

(Tr. at 21.) The ALJ further noted that Plaintiff's new patient evaluation and the Duke Neurology Clinic in May 2016 reflected that Plaintiff would be able to perform exertional and postural activities well enough to function within the RFC, as evidenced by clinical findings. (Tr. at 21, 1048.) Thus, the ALJ's decision includes substantial analysis of Plaintiff's complaints in light of the overall evidence, and sets out the basis for the ALJ's conclusions included in the RFC.

Plaintiff specifically challenges the ALJ's decision to discount Plaintiff's subjective complaints regarding his need to elevate his legs. However, the ALJ discussed that issue in detail and specifically set out the basis for the determination, as set out above. (Tr. at 21.) Moreover, the ALJ addressed that issue again in discussing the vocational expert testimony.

---

[5] Plaintiff's physician, Dr. Cox, observed that he suspected Plaintiff would need further repair of aneurysmal segments "at some point," and recommended that Plaintiff be set for "re-scan in a year." (Tr. at 1004). At the scan in December 2015, the impression reflected "minimal mild mural calcifications of the vessels" with "some mild wall thickening" but "overall no significant interval change" and "there likely is some relatively slower flow in the runoff vessels to the right foot compared to the left which is also a stable finding." (Tr. at 1008.)

At the hearing, Plaintiff's representative posed a hypothetical to the vocational expert, and the vocational expert agreed that if it was necessary for an individual to elevate his legs at or above waist height for two to four minutes every hour, it would be difficult for the individual to be productive and this requirement would be "work preclusive." (Tr. at 72-73.) In his decision, the ALJ specifically addressed this testimony as follows:

> The undersigned declines to adopt the limitation the representative posed in the hypothetical given to the vocational expert. This is because it is not supported by the documentary record, and in particular the medical evidence, and claimant testimony alone is inadequate to support such a restrictive limitation.

(Tr. at 25.) As the ALJ explained, there is no evidence that leg elevation was ever recommended by a healthcare provider, let alone required, and Plaintiff fails to refute this. (See Tr. at 21.) Plaintiff fails to point to any other way in which a more favorable evaluation of his subjective statements could conceivably have altered his RFC or the outcome of his case.[6] Accordingly, the Court finds no basis for remand.

B.   Concentration, persistence, and pace

Plaintiff next argues that his RFC fails to properly account for his moderate limitations in concentration, persistence, and pace. In Mascio, the Fourth Circuit explained that where, as here, such limitations are reflected at step three, the ALJ should address those limitations in assessing the RFC or should explain why the limitations do not affect the claimant's ability to work. The Fourth Circuit specifically held that "an ALJ does not account for a claimant's

---

[6] Plaintiff notes that he needs to divide his time between sitting, standing, and elevating his legs, and that the ALJ "did not address [Plaintiff's] testimony about his inability to stand in one place." (Pl.'s Br. [Doc. #12] at 8). It is not clear if Plaintiff is raising this as a separate basis for remand. However, the ALJ considered Plaintiff's testimony in light of the record as a whole, as set out above. Moreover, vocational expert testimony at step five indicated that all of the jobs identified in the present case can be performed with a sit/stand option (Tr. at 71). Therefore, any error in this respect is harmless.

13

limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." 780 F.3d at 638 (quotation omitted). This is because "the ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." Id. The Fourth Circuit further noted that

> [p]erhaps the ALJ can explain why Mascio's moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation in Mascio's residual functional capacity. For example, the ALJ may find that the concentration, persistence, or pace limitation does not affect Mascio's ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the vocational expert. But because the ALJ here gave no explanation, a remand is in order.

Id. (internal citation omitted).

Here, as in Mascio, the ALJ found moderate limitations in concentration, persistence, or pace at step three of the sequential analysis. Specifically, the ALJ found:

> With regard to concentrating, persisting, or maintaining pace, the claimant has moderate limitations. The claimant has reported subjective symptoms of diminished concentration. On mental status exam, the claimant has at times shown overactive attention and concentration, but his attention span is generally within normal limits. While the record shows that the impairments' symptoms significantly interfere with his ability to sustain focused attention and to stay on task at a sustained rate, they do not do so in a marked manner.

(Tr. at 16.) Later in the sequential analysis, the ALJ formulated a mental RFC limiting Plaintiff to simple, routine, and repetitive work, which he further defined as work which "requires little or no judgment; requires little specific vocational preparation and can be learned on the job within thirty days; does not provide work skills; and has no more than frequent changes in core work duties." (Tr. at 17.) Significantly, the ALJ further found that Plaintiff "can perform

14

goal-oriented rather than production-oriented work (i.e., the performance of work tasks in allotted time is more important than the pace at which the work tasks are performed)." (Id.)

Plaintiff now argues that the RFC restriction to simple, routine, repetitive tasks in a work environment that is "goal-oriented rather than production-oriented work" fails to adequately address his moderate limitations in concentration, persistence, or pace. In response, Defendant notes that other decisions in this District specifically addressed the issue of whether such restrictions adequately account for moderate limitations in concentration, persistence, or pace. See Grant v. Colvin, No. 1:15CV515, 2016 WL 4007606, at *6-9 (M.D.N.C. July 26, 2016); Bryan-Tharpe v. Colvin, No. 1:15CV00272, 2016 WL 4079532 at *7 (M.D.N.C. July 29, 2016). In Grant, the court undertook an in-depth analysis of the case law from other circuits underpinning the Fourth Circuit's decision in Mascio. After "review[ing] how those appellate courts (and district courts within those circuits) have ruled in cases involving a moderate limitation in CPP and a restriction to non-production work in the mental RFC," the court concluded that "the weight of authority in the circuits that rendered the rulings undergirding the Fourth Circuit's holding in Mascio supports the view that the non-production restriction . . . sufficiently accounts for [a claimant's] moderate limitation in CPP." Grant, at *7, *9.

Plaintiff nevertheless contends that this Court should instead conclude that the limitation to non-production work does not sufficiently address moderate limitations in concentration, persistence, and pace. However, in the present case, the ALJ not only included the limitation to "goal-oriented rather than production-oriented work", but also specifically

15

explained the decision in this case. As previously noted in other cases in this District, the Fourth Circuit's decision in Mascio

> "does not broadly dictate that a claimant's moderate impairment in concentration, persistence, or pace always translates into a limitation in the RFC. Rather, Mascio underscores the ALJ's duty to adequately review the evidence and explain the decision. . . .
>
> An ALJ may account for a claimant's limitation with concentration, persistence, or pace by restricting the claimant to simple, routine, unskilled work where the record supports this conclusion, either through physician testimony, medical source statements, consultative examinations, or other evidence that is sufficiently evident to the reviewing court."

Tolbert v. Colvin, 1:15CV437, 2016 WL 6956629, at *8 (M.D.N.C. Nov. 28, 2016) (finding that RFC limitations to "simple, routine, repetitive tasks with simple, short instructions, in a job that required making only simple, work-related decisions, involved few workplace changes, and required only frequent contact with supervisors, co-workers, or the public" sufficiently accounted for a Plaintiff's moderate limitations in concentration, persistence, or pace in light of the ALJ's explanation throughout the administrative decision) (quoting Jones v. Colvin, No. 7:14CV00273, 2015 WL 5056784, at *10-12 (W.D. Va. Aug. 20, 2015)).

In this case, as in Tolbert, the ALJ sufficiently explained why Plaintiff's limitations in concentration, persistence, or pace were accounted for by the RFC. First, the ALJ weighed the evidence and made specific findings regarding Plaintiff's abilities, and the ALJ then addressed Plaintiff's limitations and abilities by adopting an RFC that not only limited Plaintiff to simple, routine, repetitive tasks, but also limited her to "goal-oriented rather than production-oriented work." In formulating the RFC, the ALJ specifically discussed the medical evidence and Plaintiff's limitations and abilities and ultimately concluded that:

> Turning to the mental limitations, limiting the claimant to goal based work reflects the effect of moderate limitation in concentration, persistence, and maintaining pace. This will allow [Plaintiff] more discretion in selecting his work pace. [Plaintiff's] moderate limitations in understanding, remembering, or applying information; concentrating, persisting, or maintaining pace; and in adapting and managing oneself inform the limitations in task complexity and job changes, limiting him to simple and routine work.

(Tr. at 24.) Thus, the ALJ not only adequately accounted for Plaintiff's concentration, persistence, and pace limitations in the RFC itself, but also provided additional explanations and bases for doing so in the decision. This is sufficient to create the requisite "logical bridge," and in these circumstances, there is no basis for a remand pursuant to Mascio. In short, unlike in Mascio, the instant ALJ discussed the substantial record evidence and included a specific explanation of how Plaintiff's moderate limitation at step three translated into additional RFC restrictions. Accordingly, the Court finds no error.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED, that Plaintiff's Motion for Judgment Reversing the Commissioner [Doc. #11] be DENIED, that Defendant's Motion for Judgment on the Pleadings [Doc. #14] be GRANTED, and that this action be DISMISSED with prejudice.

This, the 20th day of February, 2019.

/s/ Joi Elizabeth Peake
United States Magistrate Judge